**EXHIBIT A**

INDEX NO. 500775/2025

FILED: KINGS COUNTY CLERK 01/09/2025 12:32 PM

NYSCEF DOC. NO.   Case 1:25-cv-00868-KAM-JRC   Document 1-1   Filed 02/14/25   Page 2 of 49 PageID #:
RECEIVED NYSCEF: 01/09/2025
5

SUPREME COURT
OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| *BRIDGETTE SHARELL JACKSON,* | ) Index Number: _____ |
| Plaintiff, | ) |
| | ) *Summons* |
| *v.* | ) |
| | ) Date Index Number Purchased: <u>January 8, 2025</u> |
| *AUSTIN CAPITAL BANK SSB,* | ) |
| *CAPITAL ONE, N.A.,* | ) |
| *DISCOVER BANK,* | ) |
| *PENTAGON FEDERAL CREDIT UNION,* | ) |
| *WEBBANK,* | ) |
| *EQUIFAX INFORMATION SERVICES L.L.C.,* | ) |
| *EXPERIAN INFORMATION SOLUTIONS, INC.,* | ) |
| *and TRANSUNION INTERACTIVE, INC.,* | ) |
| Defendants. | ) |

To the above named Defendants:

| | | |
|---|---|---|
| Erik Beguin | Capital One, N.A. | Discover Bank |
| President | c/o Registered Agent: | c/o Registered Agent: |
| Austin Capital Bank SSB | Corp. Serv. Co. | CT Corporation System |
| 8100 Shoal Creek Blvd., No. 100 | 100 Shockoe Slip Fl 2 | 28 Liberty Street, Floor 42 |
| Austin, TX 78757 | Richmond, VA, 23219 | New York, NY 10005 |

| | |
|---|---|
| Pentagon Federal Credit Union | WebBank |
| c/o Secretary of State currently listed | c/o Registered Agent |
| Registered Agent: F. Perry Odom | 215 S. State Street, No. 1000 |
| 305 S. Gadsden Street | Salt Lake City, UT 84111 |
| Tallahassee, FL 32301 | |

| | | |
|---|---|---|
| SouthState Corporation | Equifax Information Services L.L.C. | TransUnion Interactive, Inc. |
| c/o Registered Agent: | c/o Registered Agent: | c/o Registered Agent: |
| V. Nicole Comer | Corporation Service Company | Corp.Serv. Co. |
| 700 Gervais Street | 80 State Street | 80 State Street |
| Columbia, SC 29201 | Albany, NY 12207 | Albany, NY 12207 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is <u>Civil Practice Law & Rules Section 503(c),</u> which <u>is the county designed by Plaintiff when Plaintiff does not reside in NY and Defendants do not have their principal office in NY.</u>

Dated: <u>January 8, 2025</u>

Paúl Camarena, Esq.
by: *Paúl Camarena* _____

Paúl Camarena, Esq.
26 Court St., No. 409
Brooklyn, NY 11242
(312) 493-7494
paulcamarena@paulcamarena.com
NY Atty No: 3991981

Case 1:25-cv-00868-KAM-JRC Document 1-1 Filed 02/14/25 Page 3 of 49 PageID #: 6

**IN NEW YORK STATE**
**KINGS COUNTY**
**SUPREME COURT**

| | |
|---|---|
| *BRIDGETTE SHARELL JACKSON*, | ) |
| Plaintiff, | ) |
| | ) |
| *v.* | ) |
| | ) |
| *AUSTIN CAPITAL BANK SSB,* | ) |
| *CAPITAL ONE, N.A.,* | ) |
| *DISCOVER BANK,* | ) |
| *PENTAGON FEDERAL CREDIT UNION,* | ) |
| *WEBBANK,* | ) |
| *EQUIFAX INFORMATION SERVICES L.L.C.,* | ) |
| *EXPERIAN INFORMATION SOLUTIONS, INC.,* | ) |
| *and TRANSUNION INTERACTIVE, INC.,* | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Bridgette S. Jackson, by her counsel Paúl Camarena, respectfully complains as follows:

### Introduction.

1) The United States Fair Credit Reporting Act and its progeny provide that, when a consumer disputes a creditor's reported information to a credit reporting agency, the creditor (or "furnisher of information") must reasonably investigate that information and the credit reporting agency (or "C.R.A.") must reasonably re-investigate that same information. The U.S. Fair Credit Reporting Act also provides that, if the furnisher or CRA's investigation does not verify the consumer disputed information, the furnisher and CRA must delete that information off any credit report on the consumer.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 4 of 49 PageID #: 7

2)      In the instant case, Plaintiff Bridgette Jackson repeatedly disputed Furnishers Austin

Capital, Capital One, Discover Bank, Pentagon Credit, and WebBanks's reported information to

CRA's Equifax, Experian, and TransUnion.  However, the Furnishers repeatedly failed to

reasonably investigate their own reported information, and the CRA's also repeatedly failed to

reasonably re-investigate that same information, much less delete that information off the credit

reports.

3)      The Defendant Furnishers' reported information about Plaintiff Ms. Jackson was

inaccurate, and the Defendant CRA's included that inaccurate information on their reports for

Ms. Jackson.  That said, the U.S. F.C.R.A. mandated the Defendants to perform reasonable

investigations and re-investigations, and each Defendant's failure to reasonably investigate or re-

investigate was *per se* a violation of the FCRA, regardless of whether any Defendant's

information was inaccurate.  *Spokeo v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1550 (2016) ("On

the one hand, Congress plainly sought to curb the dissemination of false information by adopting

procedures designed to decrease that risk.  On the other hand, [ a] ***violation*** of one of the FCRA's

procedural requirements may result in no harm.  For example, even if a credit reporting agency

fails to provide the required notice to a user of the agency's consumer information, that

information regardless may be entirely accurate.") (emphasis added) (dismissing FCRA claim

because the FCRA violation did not result in any harm or a case or controversy as required by

Article III of the U.S. Constitution.  However, "the constraints of Article III do not apply to state

courts, and accordingly the state courts are not bound by the limitations of a case or controversy

or other federal rules of justiciability even when they address issues of federal law, as when they

are called upon to interpret the Constitution or, in this case, a federal statute." *Asarco v. Kadish*,

490 U.S. 605, 617 (1989)).

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 5 of 49 PageID #: 8

## **Jurisdiction.**

4)      The FCRA, at 15 U.S.C. §§ 1681n and o, states that "[a]ny person who is negligent in failing to comply" or "who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer."  The FCRA, at 15 U.S.C. § 1681p, further states that an "action to enforce any liability created under this subchapter may be brought in any appropriate United States district court … or in any other court of competent jurisdiction."

5)      However, the instant action may not appropriately be brought in a United States district court because United States district courts are courts of limited jurisdiction and, thus, "[f]or a federal court to exercise jurisdiction over an actual case or controversy, a plaintiff must assert a cognizable injury" in fact, *United States v. McDowell*, 23-5837, 2024 WL 4589496, *2 (6th Cir. October 28, 2024); but "ongoing stress, anxiety, intimidation, and emotional and psychological distress … is not a cognizable injury in fact" in federal court.  *Soule v. Connecticut Association of Schools*, 90 F.4th 34, FN4 (2d Cir. December 15, 2023).

6)      By contrast, the New York Constitution, Article VI, Section 7a. states that the "supreme court shall have general original jurisdiction in law and equity" and, at least in N.Y. state courts, "when there is a duty owed by defendant to plaintiff, breach of that duty resulting directly in emotional harm is compensable."  *Kennedy v. McKesson*, 448 N.E.2d 1332, 1334 (1983) (citation omitted).  Thus, this Court does have Constitutional and statutory jurisdiction over this action.

*See also*, *Venditti v. Village of Brookville*, 96 A.D.2d 887, 888, 466 N.Y.S.2d 45, 46 (2nd Dept. 1983) (remarking on a "trend in this State toward a liberal position in favor of finding standing and determining disputes upon the merits" and noting that "[t]his broadening of the rules has ... even permitted actions not maintainable in Federal courts to be brought in our courts").

## **Parties.**

7)      Ms. Jackson is a natural person and, thus, is a "consumer" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(c).

8)      Defendant Austin Capital Bank SSB is a Corporation and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity ") and, hence, Defendant Austin Capital was required to "conduct an investigation with respect to the disputed information" pursuant to 15 U.S.C § 1681s-2(b)(1)(A).

9)      Defendant Capital One, N.A. is a Corporation and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity ") and, hence, Defendant Capital One was required to "conduct an investigation with respect to the disputed information" pursuant to 15 U.S.C § 1681s-2(b)(1)(A).

10)      Defendant Discover Bank is a Corporation and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity ") and, hence, Defendant Discover Bank was required to "conduct an investigation with respect to the disputed information" pursuant to 15 U.S.C § 1681s-2(b)(1)(A).

11)      Defendant Pentagon Federal Credit Union is a Corporation and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity ") and, hence, Defendant Pentagon Federal was required to "conduct an investigation with respect to the disputed information" pursuant to 15 U.S.C § 1681s-2(b)(1)(A).

12)     Defendant WebBank is a Corporation and, thus, is a "person" as that term is defined in
the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity ") and, hence, Defendant
WebBank was required to "conduct an investigation with respect to the disputed information"
pursuant to 15 U.S.C § 1681s-2(b)(1)(A).

13)     Defendant Equifax regularly assembles consumer credit information for the purpose of
furnishing credit information and, thus, is a "consumer reporting agency" as that term is defined
in the FCRA, at 15 U.S.C. § 1681a(f).

14)     Defendant Experian regularly assembles consumer credit information for the purpose of
furnishing credit information and, thus, is a "consumer reporting agency" as that term is defined
in the FCRA, at 15 U.S.C. § 1681a(f).

15)     Defendant TransUnion regularly assembles consumer credit information for the purpose
of furnishing credit information and, thus, is a "consumer reporting agency" as that term is
defined in the FCRA, at 15 U.S.C. § 1681a(f).

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 8 of 49 PageID #: 11

**Factual Allegations.**

Furnisher Austin Capital and CRA Equifax.

16)     The FCRA, at 15 U.S.C. § 1681s-2(a)(5), states that a furnisher shall "notify the [credit reporting] agency of the date of delinquency on the account, which shall be the month and year of the commencement of the delinquency."  (Emphasis added.)  *See also*, *CFPB Advisory Opinion*, 87 FR 64689, 64691 (Vol. 87, No. 206) (Oct. 26, 2022) ("The Date of First Delinquency provided by a furnisher must reflect the month and year on which the delinquency being reported commenced.") (emphasis added), available at https://www.federalregister.gov/ /documents/2022/10/26/2022-23264/fair-credit-reporting-facially-false-data#footnote-23-p64691 .

17)     Also, "under the FCRA, the account can only stay on record up to seven years following the date of first delinquency."  *Ayala v. Experian*, 22 cv 4935, 2024 WL 1328827, *1 (N.Dist. Ill. March 28, 2024) (emphasis added).  *See also, Gillespie v. Equifax*, 05 cv 138, 2008 WL 4316950, *7 (N.Dist. Ill. Sept. 15, 2008) ("the date of first delinquency is the proper anchor date for calculating the seven-year statutory period during which it is permissible to report a delinquent account"); *How Long Does Information Stay on My Equifax Credit Report?*, Equifax Website (noting that "late payments remain on a credit report for up to seven years from the original delinquency date -- the date of the missed payment"), available at https://www.equifax.com/personal/education/credit/report/articles/ -/learn/how-long-does-information-stay-on-credit-report/  (emphasis added).  Thus, the more recent the "Date of First Delinquency," the longer the delinquency will remain on a credit report.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 9 of 49 PageID #: 12

18)     In addition, a more recent delinquency will cause a credit score to further decrease.  *See, e.g, In re Anzaldo*, 612 B.R. 205, 212 (Bankr. S.D. Cal. 2020) ("reporting newer negative late payment information would lower the consumer's credit score"); *Toliver v. Experian*, 973 F. Supp. 2d 707, 722, FN78 (S.D. Tex. 2013) ("a more recent date in this entry will have a greater negative impact on a consumer's credit score").

19)     Ms. Jackson opened a credit account with Austin Capital several years ago, but Ms. Jackson's account payments become delinquent in October 2021 and her account was placed in collections in early December 2021 by Austin Capital.

20)     Nevertheless, Ms. Jackson paid her entire balance to Austin Capital and closed her account in late December 2021.

21)     Austin Capital properly reported to Equifax that Ms. Jackson opened a credit account and that her account payments had become delinquent.

22)     However, Austin Capital inaccurately reported to Equfax that Ms. Jackson's accounts' "Date[s] of First Delinquency" was in November 2021.  Thus, Austin Capital's inaccurate reporting will cause Ms. Jackson's financial delinquency to remain on her credit report longer than the FCRA allows.  *Supra,* ¶ 17.  Austin Capital is also inaccurately conveying that Ms. Jackson's financial delinquency commenced more recently than it actually did and, hence, Austin Capital is causing Ms. Jackson's credit score to improperly further decrease.  *Supra,* ¶ 18.

Case 1:25-cv-00868-KAM-JRC     Document 1-1     Filed 02/14/25     Page 10 of 49 PageID
#: 13

23)     Also, although Austin Capital accurately reported to Equifax that Ms. Jackson had "paid

and closed" her account, Austin Capital inaccurately reported that Ms. Jackson's account still has

an "Available Credit" of $ 9,000.  Austin Capital's inaccurately reported information about Ms.

Jackson's "Available Credit" risks further decreasing her credit rating.  *See*, *e.g*., John Ulzheimer,

*How Much Credit is Too Much Credit?*, Smart Credit (August 22, 2013) (Defense Expert Witness

John Ulzheimer opining that, if a consumer "ha[s] $50,000 in available credit, the lender may

consider this too much in relation to [her] ability to pay"), available at

https://www.smartcredit.com/blog/how-much-credit-is-too-much-credit/ .

24)     Austin Capital's inaccurate reporting about Ms. Jackson's account was parroted in

Equifax's credit report on Ms. Jackson.

25)     Thus, Ms. Jackson repeatedly submitted disputes about Austin Capital's inaccurate

reporting to Equifax.  In Ms. Jackson's repeated disputes, Ms. Jackson specifically explained that

"Austin Capital and Equifax reporting that this account's Date of First Delinquency was in Nov

2021 is inaccurate" and that "Austin Capital and Equifax reporting that this account has an

Available Credit of $9,000 is inaccurate and directly contradicted by Austin Capital One and

Equifax reporting that this exact same account was paid and closed."

26)     Ms. Jackson's repeated disputes to Equifax also listed her telephone number and email

address, and Ms. Jackson repeatedly requested Austin Capital and Equifax to contact her to

investigate her disputes.

27)     Upon information and belief, Ms. Jackson's repeated disputes to Equifax were forwarded

to, and received by, Austin Capital.

28)      However, Defendants Austin Capital and Equifax never bothered to contact Ms. Jackson to investigate her disputes; Defendants Austin Capital and Equifax repeatedly failed to reasonably investigate or re-investigate their own inaccurately reported information or inaccurate report; and Defendant Austin Captial continues to report its inaccurate information to Defendant Equifax, which continues to include that same inaccurate information in its credit report on Ms. Jackson.

29)      Defendant Austin Capital also repeatedly failed to comply with its statutory obligations by repeatedly continuing to report its debt information but not Ms. Jackson's dispute of that debt information.

30)      Defendant Austin Capital's "decision to report the debt but not the dispute resulted in a much lower credit score" because "when a furnisher responds to a [credit reporting agency's] dispute verification form and relates an ongoing dispute, [the credit reporting agency] records the dispute in the credit report and does not include the derogatory information in assessing the credit score." *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 146 – 150 (4th Cir. 2008).

31)      In addition, the FCRA, at Section 1681i(c), specifically provides that "[w]henever a statement of a dispute is filed … the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed;"  and a credit reporting agency's "[f]ailure to comply with § 1681i(c) is an independent basis for liability," *Chaitoff v. Experian*, 79 F.4th 800, 808 (7th Cir. 2023).  Nevertheless, Defendant Equifax continues to fail to note that Austin Capital's reported information about Ms. Jackson's debt is disputed by her.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 12 of 49 PageID #: 15

<u>Furnisher Capital One and CRA Equifax.</u>

32)      The FCRA, at 15 U.S.C. § 1681s-2(a)(5), states that a furnisher shall "notify the [credit

reporting] agency of the date of delinquency on the account, which shall be the month and year

of <u>the commencement of the delinquency</u>."  (Emphasis added.)  *See also*, *CFPB*

*Advisory Opinion*, 87 FR 64689, 64691 (Vol. 87, No. 206) (Oct. 26, 2022) ("The Date of First

Delinquency provided by a furnisher must reflect the month and year on which the delinquency

being reported <u>commenced</u>.") (emphasis added), available at https://www.federalregister.gov/

/documents/2022/10/26/2022-23264/fair-credit-reporting-facially-false-data#footnote-23-

p64691 .

33)      Also, "under the FCRA, the account can only stay on record up to seven years following

the date of <u>first delinquency</u>."  *Ayala v. Experian*, 22 cv 4935, 2024 WL 1328827, *1 (N.Dist. Ill.

March 28, 2024) (emphasis added).  *See also, Gillespie v. Equifax*, 05 cv 138, 2008 WL

4316950, *7 (N.Dist. Ill. Sept. 15, 2008) ("the date of <u>first delinquency</u> is the proper anchor date

for calculating the seven-year statutory period during which it is permissible to report a

delinquent account"); *How Long Does Information Stay on My Equifax Credit Report?*, Equifax

Website (noting that "late payments remain on a credit report for up to seven years from the

original delinquency date -- <u>the date of the missed payment</u>"), available at

https://www.equifax.com/personal/education/credit/report/articles/

-/learn/how-long-does-information-stay-on-credit-report/  (emphasis added).  Thus, the more

recent the "Date of First Delinquency," the longer the delinquency will remain on a credit report.

34)    In addition, a more recent delinquency will cause a credit score to further decrease. *See, e.g, In re Anzaldo*, 612 B.R. 205, 212 (Bankr. S.D. Cal. 2020) ("reporting newer negative late payment information would lower the consumer's credit score"); *Toliver v. Experian*, 973 F. Supp. 2d 707, 722, FN78 (S.D. Tex. 2013) ("a more recent date in this entry will have a greater negative impact on a consumer's credit score").

35)    Eight years ago, Ms. Jackson opened a credit account with Capital One but, after several years, Ms. Jackson struggled to maintain her payments on the account. Thus, Ms. Jackson's account payments become delinquent in February 2019, her account payments were 30 days delinquent in March 2019, and her account payments were 60 days delinquent in April 2019.

36)    Capital One properly reported to Equifax that Ms. Jackson's account payments were 30 days delinquent in March 2019 and 60 days delinquent in April 2019 and that Capital One placed the account in collections and closed the account later in 2019.

37)    However, Capital One inaccurately reported to Equfax that Ms. Jackson's accounts' "Date[s] of First Delinquency" was in April 2019. Thus, Capital One's inaccurate reporting will cause Ms. Jackson's financial delinquency to remain on her credit report longer than the FCRA allows. *Supra,* ¶ 33. Capital One is also inaccurately conveying that Ms. Jackson's financial delinquency commenced more recently than it actually did and, hence, Capital One is causing Ms. Jackson's credit score to improperly further decrease. *Supra,* ¶ 34.

38)    Also, although Capital One accurately reported to Equifax that Capital One had closed Ms. Jackson's account, Capital One inaccurately reported that Ms. Jackson's account still has an "Available Credit" of $750. Capital One's inaccurately reported information about Ms. Jackson's "Available Credit" risks further decreasing her credit rating. *See*, *e.g.*, John Ulzheimer, *How Much Credit is Too Much Credit?*, Smart Credit (August 22, 2013) (Defense Expert Witness John Ulzheimer opining that, if a consumer "ha[s] $50,000 in available credit, the lender may consider this too much in relation to [her] ability to pay"), available at https://www.smartcredit.com/blog/how-much-credit-is-too-much-credit/ .

39)    Capital One's inaccurate reporting about Ms. Jackson's account was parroted in Equifax's credit report on Ms. Jackson.

40)    Thus, Ms. Jackson repeatedly submitted disputes about Capital One's inaccurate reporting to Equifax. In Ms. Jackson's repeated disputes, Ms. Jackson specifically explained that "Capital One and Equifax reporting this account's 'Date of First Delinquency' as being in Apr 2019 is inaccurate and directly contradicted by Capital One and Equifax having reported that this exact same account was at least 60 days past due in this exact same month (which has only 30 days)." In Ms. Jackson's repeated disputes, Ms. Jackson also specifically explained that "Capital One and Equifax reporting that this account has an Available Credit of $750 is inaccurate and directly contradicted by Capital One and Equifax reporting that this exact same account is closed."

41)    Ms. Jackson's repeated disputes to Equifax also listed her telephone number and email address, and Ms. Jackson repeatedly requested Capital One and Equifax to contact her to investigate her disputes.

42)    Upon information and belief, Ms. Jackson's repeated disputes to Equifax were forwarded to, and received by, Capital One.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 15 of 49 PageID #: 18

43)     However, Defendants Capital One and Equifax never bothered to contact Ms. Jackson to investigate her disputes; Defendants Capital One and Equifax repeatedly failed to reasonably investigate or re-investigate their own inaccurately reported information or inaccurate report; and Defendant Capital One continues to report its inaccurate information to Defendant Equifax, which continues to include that same inaccurate information in its credit report on Ms. Jackson.

44)     Ms. Jackson's dispute additionally protested that "Capital One is continuing to report this debt but is not reporting that [Ms. Jackson] is still currently disputing the debt details." Nevertheless, Defendant Capital One repeatedly failed to comply with its statutory obligations by repeatedly continuing to report its debt information but not that Ms. Jackson is still currently disputing that debt information.

45)     Defendant Capital One's "decision to report the debt but not the dispute resulted in a much lower credit score" because "when a furnisher responds to a [credit reporting agency's] dispute verification form and relates an ongoing dispute, [the credit reporting agency] records the dispute in the credit report and does not include the derogatory information in assessing the credit score." *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 146 – 150 (4th Cir. 2008).

Case 1:25-cv-00868-KAM-JRC   Document 1-1   Filed 02/14/25   Page 16 of 49 PageID
#: 19

46)     Further, the FCRA, at Section 1681i(c), specifically provides that "[w]henever a

statement of a dispute is filed … the consumer reporting agency shall, in any subsequent

consumer report containing the information in question, clearly note that it is disputed;"  and a

credit reporting agency's "[f]ailure to comply with § 1681i(c) is an independent basis for

liability," *Chaitoff v. Experian*, 79 F.4th 800, 808 (7th Cir. 2023).  Moreover, Ms. Jackson's

dispute protested that, "despite [Ms. Jackson's] statement of dispute, Equifax is failing to note

that Capital One's reported information about [Ms. Jackson's] debt is still currently disputed by"

her.  Nevertheless, Defendant Equifax continues to fail to note that Capital One's reported

information about Ms. Jackson's debt is still currently disputed by her.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 17 of 49 PageID #: 20

<u>Furnisher Discover Bank and CRA Equifax.</u>

47)    In February 2020, Ms. Jackson opened a credit account with Discover Bank, she used that credit account to make a few purchases and, within a few months, she paid her entire balance and closed the account.

48)    Discover Bank properly reported to Equifax that Ms. Jackson opened a credit account and that, within a few months, she paid the entire balance and closed the account.

49)    However, Discover Bank inaccurately reported to Equfax that Ms. Jackson's account still has an "Available Credit" of $200,  and Discovery Bank's inaccurately reported information about Ms. Jackson's "Available Credit" risks decreasing her credit rating.  *See*, *e.g*., John Ulzheimer, *How Much Credit is Too Much Credit?*, Smart Credit (August 22, 2013) (Defense Expert Witness John Ulzheimer opining that, if a consumer "ha[s] $50,000 in available credit, the lender may consider this too much in relation to [her] ability to pay"), available at https://www.smartcredit.com/blog/how-much-credit-is-too-much-credit/ .

50)    Discover Bank's inaccurate reporting about Ms. Jackson's account was parroted in Equifax's credit report on Ms. Jackson.

51)    Thus, Ms. Jackson repeatedly submitted disputes about Discover Bank's inaccurate reporting to Equifax.  In Ms. Jackson's repeated disputes, Ms. Jackson specifically explained that "Discover Bank and Equifax reporting that this account has an Available Credit of $200 is inaccurate and directly contradicted by Discover Bank and Equifax reporting that this exact same [account] was 'paid and closed.'"

52)    Ms. Jackson's repeated disputes to Equifax also listed her telephone number and email address, and Ms. Jackson repeatedly requested Discover Bank and Equifax to contact her to investigate her disputes.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 18 of 49 PageID #: 21

53)     Upon information and belief, Ms. Jackson's repeated disputes to Equifax were forwarded to, and received by, Discover Bank.

54)     However, Defendants Discover Bank and Equifax never bothered to contact Ms. Jackson to investigate her disputes; Defendants Discover Bank and Equifax repeatedly failed to reasonably investigate or re-investigate their own inaccurately reported information or inaccurate report; and Defendant Discover Bank continues to report its inaccurate information to Defendant Equifax, which continues to include that same inaccurate information in its credit report on Ms. Jackson.

55)     In Ms. Jackson's dispute, Ms. Jackson additionally protested that "Discover is continuing to report this debt but is not reporting that [Ms. Jackson] is still currently disputing the debt details."  Nevertheless, Defendant Discover Bank repeatedly failed to comply with its statutory obligations by repeatedly continuing to report its debt information but not that Ms. Jackson is still currently disputing that debt information.

56)     Defendant Discover Bank's "decision to report the debt but not the dispute resulted in a much lower credit score" because "when a furnisher responds to a [credit reporting agency's] dispute verification form and relates an ongoing dispute, [the credit reporting agency] records the dispute in the credit report and does not include the derogatory information in assessing the credit score."  *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 146 – 150 (4th Cir. 2008).

57)     Further, the FCRA, at Section 1681i(c), specifically provides that "[w]henever a statement of a dispute is filed … the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed;"  and a credit reporting agency's "[f]ailure to comply with § 1681i(c) is an independent basis for liability," *Chaitoff v. Experian*, 79 F.4th 800, 808 (7th Cir. 2023).  Moreover, Ms. Jackson's dispute specifically protested that, "despite [Ms. Jackson's] statement of dispute, Equifax is failing to note that Discover's reported information about Bridgette Jackson's debt is still currently disputed by" her.  Nevertheless, Defendant Equifax continues to fail to note that Discover Bank's reported information about Ms. Jackson's debt is still currently disputed by her.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 20 of 49 PageID #: 23

<u>Furnisher Pentagon Federal Credit Union and CRA Equifax.</u>

58)     In 2017, Ms. Jackson opened a credit account with Pentagon Federal Credit Union and, a few years later, she requested Pentagon Federal to close that account and Pentagon Federal did close the account.

59)     Pentagon Federal Credit Union properly reported to Equifax that Ms. Jackson had opened a credit accounts and that the "account [was] closed at consumer's request."

60)     However, Pentagon Federal Credit Union inaccurately reported to Equfax that Ms. Jackson's account still has an "Available Credit" of $500,  and this Pentagon Federal inaccurately reported information about Ms. Jackson's "Available Credit" risks decreasing her credit rating. *See*, *e.g*., John Ulzheimer, *How Much Credit is Too Much Credit?*, Smart Credit (August 22, 2013) (Defense Expert Witness John Ulzheimer opining that, if a consumer "ha[s] $50,000 in available credit, the lender may consider this too much in relation to [her] ability to pay"), available at https://www.smartcredit.com/blog/how-much-credit-is-too-much-credit/ .

61)     Pentagon Federal Credit Union's inaccurate reporting about Ms. Jackson's account was parroted in Equifax's credit report on Ms. Jackson.

62)     Thus, Ms. Jackson repeatedly submitted disputes about Pentagon Federal Credit Union's inaccurate reporting to Equifax.  In Ms. Jackson's repeated disputes, Ms. Jackson specifically explained that "Pentagon Federal and Equifax reporting that this account has an Available Credit of $500 is inaccurate and directly contradicted by Pentagon Federal and Equifax reporting that this exact same 'account [was] closed at consumer's request.'"

63)     Ms. Jackson's repeated disputes to Equifax also listed her telephone number and email address, and Ms. Jackson repeatedly requested Pentagon Federal Credit Union and Equifax to contact her to investigate her disputes.

64)      Upon information and belief, Ms. Jackson's repeated disputes to Equifax were forwarded to, and received by, Pentagon Federal Credit Union.

65)      However, Defendants Pentagon Federal Credit Union and Equifax never bothered to contact Ms. Jackson to investigate her disputes; Defendants Pentagon Federal and Equifax repeatedly failed to reasonably investigate or re-investigate their own inaccurately reported information or inaccurate report; and Defendant Pentagon Federal continues to report its inaccurate information to Defendant Equifax, which continues to include that same inaccurate information in its credit report on Ms. Jackson.

66)      Defendant Pentagon Federal Credit Union also failed to comply with its statutory obligations by continuing to report its debt information but not Ms. Jackson's dispute of that debt information.

67)      Defendant Pentagon Federal Credit Union's "decision to report the debt but not the dispute resulted in a much lower credit score" because "when a furnisher responds to a [credit reporting agency's] dispute verification form and relates an ongoing dispute, [the credit reporting agency] records the dispute in the credit report and does not include the derogatory information in assessing the credit score." *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 146 – 150 (4th Cir. 2008).

Case 1:25-cv-00868-KAM-JRC     Document 1-1     Filed 02/14/25     Page 22 of 49 PageID
#: 25

68)     In addition, the FCRA, at Section 1681i(c), specifically provides that "[w]henever a

statement of a dispute is filed … the consumer reporting agency shall, in any subsequent

consumer report containing the information in question, clearly note that it is disputed;"  and a

credit reporting agency's "[f]ailure to comply with § 1681i(c) is an independent basis for

liability," *Chaitoff v. Experian*, 79 F.4th 800, 808 (7th Cir. 2023).  Nevertheless, Defendant

Equifax continues to fail to note that Defendant Pentagon Federal Credit Union's reported

information about Ms. Jackson's debt is disputed by her.

Furnisher WebBank and CRA Equifax.

69)    The FCRA, at 15 U.S.C. § 1681s-2(a)(5), states that a furnisher shall "notify the [credit reporting] agency of the date of delinquency on the account, which shall be the month and year of the commencement of the delinquency."  (Emphasis added.)  *See also*, *CFPB Advisory Opinion*, 87 FR 64689, 64691 (Vol. 87, No. 206) (Oct. 26, 2022) ("The Date of First Delinquency provided by a furnisher must reflect the month and year on which the delinquency being reported commenced.") (emphasis added), available at https://www.federalregister.gov/ /documents/2022/10/26/2022-23264/fair-credit-reporting-facially-false-data#footnote-23-p64691 .

70)    Also, "under the FCRA, the account can only stay on record up to seven years following the date of first delinquency."  *Ayala v. Experian*, 22 cv 4935, 2024 WL 1328827, *1 (N.Dist. Ill. March 28, 2024) (emphasis added).  *See also, Gillespie v. Equifax*, 05 cv 138, 2008 WL 4316950, *7 (N.Dist. Ill. Sept. 15, 2008) ("the date of first delinquency is the proper anchor date for calculating the seven-year statutory period during which it is permissible to report a delinquent account"); *How Long Does Information Stay on My Equifax Credit Report?*, Equifax Website (noting that "late payments remain on a credit report for up to seven years from the original delinquency date -- the date of the missed payment") (available at https://www.equifax.com/personal/education/credit/report/articles/ -/learn/how-long-does-information-stay-on-credit-report/  (emphasis added).  Thus, the more recent the "Date of First Delinquency," the longer the delinquency will remain on a credit report.

71) In addition, a more recent delinquency will cause a credit score to further decrease. *See, e.g, In re Anzaldo*, 612 B.R. 205, 212 (Bankr. S.D. Cal. 2020) ("reporting newer negative late payment information would lower the consumer's credit score"); *Toliver v. Experian*, 973 F. Supp. 2d 707, 722, FN78 (S.D. Tex. 2013) ("a more recent date in this entry will have a greater negative impact on a consumer's credit score").

72) In April 2021, Ms. Jackson opened a credit account with WebBank, but Ms. Jackson struggled to maintain her payments on the account. Thus, Ms. Jackson's account payments become delinquent in October 2021, her account payments were 30 days delinquent in November 2021, and WebBank placed the account in collections in 2022.

73) WebBank properly reported to Equifax that Ms. Jackson's account payments were delinquent by 30 days in November 2021 and that WebBank placed the account in collections in 2022.

74) However, WebBank inaccurately reported to Equfax that Ms. Jackson's accounts' "Date[s] of First Delinquency" was on November 18, 2021. Thus, WebBank's inaccurate reporting will cause Ms. Jackson's financial delinquency to remain on her credit report longer than the FCRA allows. *Supra,* ¶ 70. WebBank is also inaccurately conveying that Ms. Jackson's financial delinquency commenced more recently than it actually did and, hence, WebBank is causing Ms. Jackson's credit score to improperly further decrease. *Supra,* ¶ 71.

75) WebBank's inaccurate reporting about Ms. Jackson's account was parroted in Equifax's credit report on Ms. Jackson.

76) Thus, Ms. Jackson repeatedly submitted disputes about WebBank's reporting to Equifax. In Ms. Jackson's repeated disputes, she specifically explained that "Webbank and Equifax reporting this account's 'Date of First Delinquency' as 'Nov 18, 2021' is inaccurate and directly contradicted by Webbank and Equifax reporting that this exact same account was at least 30 days past due in this exact same month (which has only 30 days)."

77) Ms. Jackson's repeated disputes to Equifax also listed her telephone number and email address, and Ms. Jackson repeatedly requested WebBank and Equifax to contact her to investigate her disputes.

78) Upon information and belief, Ms. Jackson's repeated disputes to Equifax were forwarded to, and received by, WebBank.

79) However, Defendants WebBank and Equifax never bothered to contact Ms. Jackson to investigate her disputes; Defendants WebBank and Equifax repeatedly failed to reasonably investigate or re-investigate their own inaccurately reported information or inaccurate report; and Defendant WebBank continues to report its inaccurate information to Defendant Equifax, which continues to include that same inaccurate information in its credit report on Ms. Jackson.

80) Defendant WebBank also failed to comply with its statutory obligations by continuing to report its debt information but not that Ms. Jackson is still currently disputing that debt information.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 26 of 49 PageID #: 29

81)     Defendant WebBank's "decision to report the debt but not the dispute resulted in a much

lower credit score" because "when a furnisher responds to a [credit reporting agency's] dispute

verification form and relates an ongoing dispute, [the credit reporting agency] records the dispute

in the credit report and does not include the derogatory information in assessing the credit score."

*Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 146 – 150 (4th Cir. 2008).

82)     In addition, the FCRA, at Section 1681i(c), specifically provides that "[w]henever a

statement of a dispute is filed … the consumer reporting agency shall, in any subsequent

consumer report containing the information in question, clearly note that it is disputed;"  and a

credit reporting agency's "[f]ailure to comply with § 1681i(c) is an independent basis for

liability," *Chaitoff v. Experian*, 79 F.4th 800, 808 (7th Cir. 2023).  Nevertheless, Defendant

Equifax continues to fail to note that WebBank's reported information about Ms. Jackson's debt

is currently disputed by her.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 27 of 49 PageID #: 30

Furnisher WebBank and CRA Experian.

83) In February 2016, Ms. Jackson opened a credit account with WebBank and Ms. Jackson's account payments were current in August 2019.

84) WebBank accurately reported to TransUnion that Ms. Jackson's account payments were current in August 2019.

85) At the same time, WebBank inaccurately reported to Experian that Ms. Jackson's account payments were past due 90 days in August 2019.

86) WebBank's inaccurate reporting about Ms. Jackson's account was parroted in Experian's credit report on Ms. Jackson.

87) Thus, Ms. Jackson repeatedly submitted disputes about WebBank's inaccurate reporting to Experian. In Ms. Jackson's repeated disputes, Ms. Jackson specifically explained that "Webbank and Experian reporting on this report that this account was past due 90 days in August 2019 is inaccurate as evidenced by Webbank reporting to TransUnion that this exact same account was current in August 2019."

88) In Ms. Jackson's dispute, Ms. Jackson also included the TransUnion report listing this exact same account as current in August 2019.

89) Ms. Jackson's repeated disputes to Experian also listed her telephone number and email address, and Ms. Jackson repeatedly requested WebBank and Experian to contact her to investigate her dispute.

90) Upon information and belief, Ms. Jackson's repeated disputes to Experian were forwarded to, and received by, WebBank.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 28 of 49 PageID #: 31

91)     However, Defendants WebBank and Experian never bothered to contact Ms. Jackson to investigate her disputes; Defendants WebBank and Experian repeatedly failed to reasonably investigate or re-investigate their own inaccurately reported information or inaccurate report; and Defendant WebBank continues to report its inaccurate information to Defendant Experian, which continues to include that same inaccurate information in its credit report on Ms. Jackson.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 29 of 49 PageID #: 32

Defendant CRA TransUnion's Reporting Regarding Ms. Jackson's Filing for Bankruptcy Relief.

92)     The Bankruptcy Code, Chapter 13, mandates that Bankruptcy debtors make at least some payments to creditors before the debtors receive discharges of their debts.

93)     In 2024, Ms. Jackson filed a Bankruptcy Chapter 13 Petition for Relief.  However, Ms. Jackson decided against proceeding with the Chapter 13 process to receive a discharge of her debts, she did not make any payment in her case, and the Bankruptcy Court dismissed her case. (*In re Bridget Jackson*, 24 B 2587 (N.Bankr.Ill.).)

94)     TransUnion properly included in its report on Ms. Jackson a statement that Ms. Jackson had filed a Bankruptcy Chapter 13 Petition.  However, TransUnion improperly included in its report on Ms. Jackson an inaccurate statement that Ms. Jackson's Bankruptcy case had a "Date Paid [of] 04/22/2024."  Thus, TransUnion's report would inaccurately convey that Ms. Jackson had proceeded with the Bankruptcy Chapter 13 process and made a Chapter 13 payment.

95)     Thus, Ms. Jackson repeatedly submitted disputes of TransUnion's inaccurate information regarding her Bankruptcy case.  In Ms. Jackson's repeated disputes to TransUnion, Ms. Jackson specifically explained that "TransUnion's reporting a Bankruptcy case date paid of 04/22/2024 is inaccurate because no one made any payment on this date in this Bankruptcy case."  Ms. Jackson's repeated disputes also directed TransUnion to her Bankruptcy case by specifically citing to her case and docket number: *In re Bridget Jackson*, 24 B 2587 (N.Bankr.Ill.).  In Ms. Jackson's repeated disputes to TransUnion, Ms. Jackson additionally listed her telephone number and email address, and Ms. Jackson repeatedly requested TransUnion to contact her to investigate her dispute.

96)     However, Defendant TransUnion never bothered to contact Ms. Jackson to investigate her disputes; Defendant TransUnion repeatedly failed to reasonably re-investigate its inaccurate information about Ms. Jackson's bankruptcy case; and Defendant TransUnion continues to include that inaccurate information about Ms. Jackson's bankruptcy case in TransUnion's report on Ms. Jackson.

97)     Further, the FCRA, at Section 1681i(c), specifically provides that "[w]henever a statement of a dispute is filed … the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed;" and a credit reporting agency's "[f]ailure to comply with § 1681i(c) is an independent basis for liability," *Chaitoff v. Experian*, 79 F.4th 800, 808 (7th Cir. 2023). Moreover, Ms. Jackson's dispute specifically protested that, "despite [Ms Jackson's] statement of dispute, TransUnion is failing to note that its reported information about [Ms. Jackson's] bankruptcy is disputed by" her. Nevertheless, Defendant TransUnion continues to fail to note that its inaccurate information about Ms. Jackson's Bankruptcy case is disputed by her.

## Causes of Action.

<u>Count One – As to Defendant Austin Capital's Failure to Reasonably Investigate.</u>

98)    The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part, that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall [ ] conduct an investigation with respect to the disputed information."  "[C]ourts have consistently concluded that § 1681s-2(b) should be read as requiring a 'reasonable' investigation." *Humphrey v. Navient Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a [furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A).  Whether the furnisher's investigation is reasonable is a factual inquiry.").

99)    Defendant Austin Capital negligently or willfully violated Subsection 1681s-2(b)(1)(A) by negligently or willfully failing to conduct reasonable investigations with respect to information about Ms. Jackson that Defendant Austin Capital itself is reporting to a credit reporting agency.

Case 1:25-cv-00868-KAM-JRC Document 1-1 Filed 02/14/25 Page 32 of 49 PageID #: 35

<u>Count Two – As to Defendant Austin Capital's Failure to Notate Ms. Jackson's Dispute.</u>

100)    The Fair Credit Reporting Act's Subsection 1681s-2(b)(1)(D) states that, "[a]fter

receiving notice [ ] of a dispute with regard to the [ ] accuracy of any information provided by a

person to a consumer reporting agency, the person shall[, ] if the investigation finds that the

information is incomplete or inaccurate, report those results."  Further, "a disputed credit file that

lacks a notation of dispute may well be 'incomplete or inaccurate' within the meaning of the

FCRA," *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1164 (9th Cir. 2009), because

"a disputed debt differs materially from an undisputed debt even if the consumer would not

succeed at a trial of the dispute."  *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150

(4th Cir. 2008).  Thus, "[i]f a consumer disputes the accuracy of credit information, the FCRA

requires furnishers to report that fact when reporting the disputed information" and the

"furnisher's decision to continue reporting a disputed debt without any notation of the dispute

presents a cognizable claim under § 1681s-2(b)."  *Gorman*, at 1162 (citing *Saunders*, at 150).

*See also*, *Seamans v. Temple University*, 744 F.3d 853, 867 (3d Cir. 2014) ("a private cause of

action arises under 15 U.S.C. § 1681s–2(b) when, having received notice of a consumer's

potentially meritorious dispute, a furnisher subsequently fails to report that the claim is

disputed"); *Boggio v. USAA*, 696 F.3d 611, 618 (6th Cir. 2012) ("a furnisher violates § 1681s-

2(b)(1)(D) if it fails to identify that a consumer disputes his information"); *Santessi v. Experian*,

20 cv 22689, 2020 WL 13401919, *3 (S.D. Fla. October 26, 2020) ("a failure to notify a CRA of

disputed account information is actionable by private parties under section 1681s-2(b)"); *Collins*

*v. BAC Home Loans*, 912 F.Supp.2d 997, 1010 (D. Col. December 12, 2012) ("this failure to

report the debts as disputed gave rise to a private cause of action under section 1681s–2(b)").

101)    Defendant Austin Capital negligently or willfully violated Subsection 1681s-2(b)(1)(D)

by negligently or willfully reporting information about Ms. Jackson to a credit reporting agency

without notating that Ms. Jackson is disputing that information.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 34 of 49 PageID #: 37

<u>Count Three – As to Defendant Capital One's Failure to Reasonably Investigate.</u>

102)    The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part, that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall [ ] conduct an investigation with respect to the disputed information."  "[C]ourts have consistently concluded that § 1681s-2(b) should be read as requiring a 'reasonable' investigation."  *Humphrey v. Navient Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a [furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A).  Whether the furnisher's investigation is reasonable is a factual inquiry.").

103)    Defendant Capital One negligently or willfully violated Subsection 1681s-2(b)(1)(A) by negligently or willfully failing to conduct reasonable investigations with respect to information about Ms. Jackson that Defendant Capital One itself is reporting to a credit reporting agency.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 35 of 49 PageID #: 38

Count Four – As to Defendant Capital One's Failure to Notate Ms. Jackson's Dispute.

104)    The Fair Credit Reporting Act's Subsection 1681s-2(b)(1)(D) states that, "[a]fter

receiving notice [ ] of a dispute with regard to the [ ] accuracy of any information provided by a

person to a consumer reporting agency, the person shall[, ] if the investigation finds that the

information is incomplete or inaccurate, report those results."  Further, "a disputed credit file that

lacks a notation of dispute may well be 'incomplete or inaccurate' within the meaning of the

FCRA," *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1164 (9th Cir. 2009), because

"a disputed debt differs materially from an undisputed debt even if the consumer would not

succeed at a trial of the dispute."  *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150

(4th Cir. 2008).  Thus, "[i]f a consumer disputes the accuracy of credit information, the FCRA

requires furnishers to report that fact when reporting the disputed information" and the

"furnisher's decision to continue reporting a disputed debt without any notation of the dispute

presents a cognizable claim under § 1681s-2(b)."  *Gorman*, at 1162 (citing *Saunders*, at 150).

*See also*, *Seamans v. Temple University*, 744 F.3d 853, 867 (3d Cir. 2014) ("a private cause of

action arises under 15 U.S.C. § 1681s–2(b) when, having received notice of a consumer's

potentially meritorious dispute, a furnisher subsequently fails to report that the claim is

disputed"); *Boggio v. USAA*, 696 F.3d 611, 618 (6th Cir. 2012) ("a furnisher violates § 1681s-

2(b)(1)(D) if it fails to identify that a consumer disputes his information"); *Santessi v. Experian*,

20 cv 22689, 2020 WL 13401919, *3 (S.D. Fla. October 26, 2020) ("a failure to notify a CRA of

disputed account information is actionable by private parties under section 1681s-2(b)"); *Collins

v. BAC Home Loans*, 912 F.Supp.2d 997, 1010 (D. Col. December 12, 2012) ("this failure to

report the debts as disputed gave rise to a private cause of action under section 1681s–2(b)").

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 36 of 49 PageID #: 39

105)    Defendant Capital One negligently or willfully violated Subsection 1681s-2(b)(1)(D) by

negligently or willfully reporting information about Ms. Jackson to a credit reporting agency

without notating that Ms. Jackson is currently disputing that information.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 37 of 49 PageID #: 40

<u>Count Five – As to Defendant Discover Bank's Failure to Reasonably Investigate.</u>

106)    The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part, that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall [ ] conduct an investigation with respect to the disputed information."  "[C]ourts have consistently concluded that § 1681s-2(b) should be read as requiring a 'reasonable' investigation."  *Humphrey v. Navient Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a [furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A).  Whether the furnisher's investigation is reasonable is a factual inquiry.").

107)    Defendant Discover Bank negligently or willfully violated Subsection 1681s-2(b)(1)(A) by negligently or willfully failing to conduct reasonable investigations with respect to information about Ms. Jackson that Defendant Discover Bank itself is reporting to a credit reporting agency.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 38 of 49 PageID #: 41

<u>Count Six – As to Defendant Discover Bank's Failure to Notate Ms. Jackson's Dispute.</u>

108)    The Fair Credit Reporting Act's Subsection 1681s-2(b)(1)(D) states that, "[a]fter

receiving notice [ ] of a dispute with regard to the [ ] accuracy of any information provided by a

person to a consumer reporting agency, the person shall[, ] if the investigation finds that the

information is incomplete or inaccurate, report those results."  Further, "a disputed credit file that

lacks a notation of dispute may well be 'incomplete or inaccurate' within the meaning of the

FCRA," *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1164 (9th Cir. 2009), because

"a disputed debt differs materially from an undisputed debt even if the consumer would not

succeed at a trial of the dispute." *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150

(4th Cir. 2008).  Thus, "[i]f a consumer disputes the accuracy of credit information, the FCRA

requires furnishers to report that fact when reporting the disputed information" and the

"furnisher's decision to continue reporting a disputed debt without any notation of the dispute

presents a cognizable claim under § 1681s-2(b)."  *Gorman*, at 1162 (citing *Saunders*, at 150).

*See also*, *Seamans v. Temple University*, 744 F.3d 853, 867 (3d Cir. 2014) ("a private cause of

action arises under 15 U.S.C. § 1681s–2(b) when, having received notice of a consumer's

potentially meritorious dispute, a furnisher subsequently fails to report that the claim is

disputed"); *Boggio v. USAA*, 696 F.3d 611, 618 (6th Cir. 2012) ("a furnisher violates § 1681s-

2(b)(1)(D) if it fails to identify that a consumer disputes his information"); *Santessi v. Experian*,

20 cv 22689, 2020 WL 13401919, *3 (S.D. Fla. October 26, 2020) ("a failure to notify a CRA of

disputed account information is actionable by private parties under section 1681s-2(b)"); *Collins

v. BAC Home Loans*, 912 F.Supp.2d 997, 1010 (D. Col. December 12, 2012) ("this failure to

report the debts as disputed gave rise to a private cause of action under section 1681s–2(b)").

109)    Defendant Discover Bank negligently or willfully violated Subsection 1681s-2(b)(1)(D)

by negligently or willfully reporting information about Ms. Jackson to a credit reporting agency

without notating that Ms. Jackson is currently disputing that information.

<u>Count Seven – As to Defendant Pentagon Federal's Failure to Reasonably Investigate.</u>

110)     The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part, that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall [ ] conduct an investigation with respect to the disputed information."  "[C]ourts have consistently concluded that § 1681s-2(b) should be read as requiring a 'reasonable' investigation."  *Humphrey v. Navient Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a [furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A).  Whether the furnisher's investigation is reasonable is a factual inquiry.").

111)     Defendant Pentagon Federal negligently or willfully violated Subsection 1681s-2(b)(1) (A) by negligently or willfully failing to conduct reasonable investigations with respect to information about Ms. Jackson that Defendant Pentagon Federal itself is reporting to a credit reporting agency.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 41 of 49 PageID #: 44

<u>Count Eight – As to Defendant Pentagon Federal's Failure to Notate Ms. Jackson's Dispute.</u>

112)    The Fair Credit Reporting Act's Subsection 1681s-2(b)(1)(D) states that, "[a]fter

receiving notice [ ] of a dispute with regard to the [ ] accuracy of any information provided by a

person to a consumer reporting agency, the person shall[, ] if the investigation finds that the

information is incomplete or inaccurate, report those results."  Further, "a disputed credit file that

lacks a notation of dispute may well be 'incomplete or inaccurate' within the meaning of the

FCRA," *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1164 (9th Cir. 2009), because

"a disputed debt differs materially from an undisputed debt even if the consumer would not

succeed at a trial of the dispute."  *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150

(4th Cir. 2008).  Thus, "[i]f a consumer disputes the accuracy of credit information, the FCRA

requires furnishers to report that fact when reporting the disputed information" and the

"furnisher's decision to continue reporting a disputed debt without any notation of the dispute

presents a cognizable claim under § 1681s-2(b)."  *Gorman*, at 1162 (citing *Saunders*, at 150).

*See also*, *Seamans v. Temple University*, 744 F.3d 853, 867 (3d Cir. 2014) ("a private cause of

action arises under 15 U.S.C. § 1681s–2(b) when, having received notice of a consumer's

potentially meritorious dispute, a furnisher subsequently fails to report that the claim is

disputed"); *Boggio v. USAA*, 696 F.3d 611, 618 (6th Cir. 2012) ("a furnisher violates § 1681s-

2(b)(1)(D) if it fails to identify that a consumer disputes his information"); *Santessi v. Experian*,

20 cv 22689, 2020 WL 13401919, *3 (S.D. Fla. October 26, 2020) ("a failure to notify a CRA of

disputed account information is actionable by private parties under section 1681s-2(b)"); *Collins*

*v. BAC Home Loans*, 912 F.Supp.2d 997, 1010 (D. Col. December 12, 2012) ("this failure to

report the debts as disputed gave rise to a private cause of action under section 1681s–2(b)").

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 42 of 49 PageID
#: 45

113)    Defendant Pentagon Federal negligently or willfully violated Subsection 1681s-2(b)(1)

(D) by negligently or willfully reporting information about Ms. Jackson to a credit reporting

agency without notating that Ms. Jackson is currently disputing that information.

<u>Count Nine – As to Defendant WebBank's Failure to Reasonably Investigate.</u>

114) The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part, that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall [ ] conduct an investigation with respect to the disputed information." "[C]ourts have consistently concluded that § 1681s-2(b) should be read as requiring a 'reasonable' investigation." *Humphrey v. Navient Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a [furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A). Whether the furnisher's investigation is reasonable is a factual inquiry.").

115) Defendant WebBank negligently or willfully violated Subsection 1681s-2(b)(1)(A) by negligently or willfully failing to conduct reasonable investigations with respect to information about Ms. Jackson that Defendant WebBank itself is reporting to a credit reporting agency.

<u>Count Ten – As to Defendant WebBank's Failure to Notate Ms. Jackson's Dispute.</u>

116)     The Fair Credit Reporting Act's Subsection 1681s-2(b)(1)(D) states that, "[a]fter

receiving notice [ ] of a dispute with regard to the [ ] accuracy of any information provided by a

person to a consumer reporting agency, the person shall[, ] if the investigation finds that the

information is incomplete or inaccurate, report those results."  Further, "a disputed credit file that

lacks a notation of dispute may well be 'incomplete or inaccurate' within the meaning of the

FCRA," *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1164 (9th Cir. 2009), because

"a disputed debt differs materially from an undisputed debt even if the consumer would not

succeed at a trial of the dispute." *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150

(4th Cir. 2008).  Thus, "[i]f a consumer disputes the accuracy of credit information, the FCRA

requires furnishers to report that fact when reporting the disputed information" and the

"furnisher's decision to continue reporting a disputed debt without any notation of the dispute

presents a cognizable claim under § 1681s-2(b)." *Gorman*, at 1162 (citing *Saunders*, at 150).

*See also*, *Seamans v. Temple University*, 744 F.3d 853, 867 (3d Cir. 2014) ("a private cause of

action arises under 15 U.S.C. § 1681s–2(b) when, having received notice of a consumer's

potentially meritorious dispute, a furnisher subsequently fails to report that the claim is

disputed"); *Boggio v. USAA*, 696 F.3d 611, 618 (6th Cir. 2012) ("a furnisher violates § 1681s-

2(b)(1)(D) if it fails to identify that a consumer disputes his information"); *Santessi v. Experian*,

20 cv 22689, 2020 WL 13401919, *3 (S.D. Fla. October 26, 2020) ("a failure to notify a CRA of

disputed account information is actionable by private parties under section 1681s-2(b)"); *Collins

v. BAC Home Loans*, 912 F.Supp.2d 997, 1010 (D. Col. December 12, 2012) ("this failure to

report the debts as disputed gave rise to a private cause of action under section 1681s–2(b)").

Case 1:25-cv-00868-KAM-JRC     Document 1-1     Filed 02/14/25     Page 45 of 49 PageID #: 48

117)     Defendant WebBank negligently or willfully violated Subsection 1681s-2(b)(1)(D) by negligently or willfully reporting information about Ms. Jackson to a credit reporting agency without notating that Ms. Jackson is currently disputing that information.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 46 of 49 PageID #: 49

<u>Count Eleven – As to Defendant Equifax's Failure to Reasonably Reinvestigate.</u>

118) The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(1)(A), states, in relevant part, that, "if the [ ] accuracy of any [ ] information [ ] in a consumer's file at a consumer reporting agency is disputed [ ] and the consumer notifies the agency [ ] the agency shall [ ] conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

119) Defendant Equifax negligently or willfully violated Subsection 1681i(a)(1)(A) by negligently or willfully failing to conduct reasonable reinvestigations into information regarding Ms. Jackson that is being reported by Defendants Austin Capital, Capital One, Discover Bank, Pentagon Federal, and WebBank.

<u>Count Twelve – As to Defendant Equifax's Failure to Note Dispute.</u>

120) The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(c), states that "[w]henever a statement of a dispute is filed … the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed;" and a credit reporting agency's "[f]ailure to comply with § 1681i(c) is an independent basis for liability," *Chaitoff v. Experian*, 79 F.4th 800, 808 (7th Cir. 2023).

121) Defendant Equifax negligently or willfully violated Subsection 1681i(c) by negligently or willfully failing to note that furnisher reported information about Ms. Jackson is disputed by her.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 47 of 49 PageID #: 50

<u>Count Thirteen – As to Defendant Experian's Failure to Reasonably Reinvestigate.</u>

122)    The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(1)(A), states, in relevant part, that, "if the [ ] accuracy of any [ ] information [ ] in a consumer's file at a consumer reporting agency is disputed [ ] and the consumer notifies the agency [ ] the agency shall [ ] conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

123)    Defendant Experian negligently or willfully violated Subsection 1681i(a)(1)(A) by negligently or willfully failing to conduct reasonable reinvestigations into information regarding Ms. Jackson that is being reported by Defendant WebBank.

Case 1:25-cv-00868-KAM-JRC    Document 1-1    Filed 02/14/25    Page 48 of 49 PageID #: 51

<u>Count Fourteen – As to Defendant TransUnion's Failure to Reasonably Reinvestigate.</u>

124)    The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(1)(A), states, in relevant part, that, "if the [ ] accuracy of any [ ] information [ ] in a consumer's file at a consumer reporting agency is disputed [ ] and the consumer notifies the agency [ ] the agency shall [ ] conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

125)    Defendant TransUnion negligently or willfully violated Subsection 1681i(a)(1)(A) by negligently or willfully failing to conduct reasonable reinvestigations into information regarding Ms. Jackson's Bankruptcy case that is on a credit report of Defendant TransUnion.

<u>Count Fifteen – As to Defendant TransUnion's Failure to Note Dispute.</u>

126)    The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(c), states that "[w]henever a statement of a dispute is filed … the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed;"  and a credit reporting agency's "[f]ailure to comply with § 1681i(c) is an independent basis for liability," *Chaitoff v. Equifax*, 79 F.4th 800, 808 (7th Cir. 2023).

127)    Defendant TransUnion negligently or willfully violated Subsection 1681i(c) by negligently or willfully failing to note that its credit report information regarding Ms. Jackson's bankruptcy case is disputed by Ms. Jackson.

### **Prayer for Relief.**

WHEREFORE, Plaintiff Bridgette Sharhell Jackson respectfully prays that this

Honorable Court will hold a trial by jury and that this Court will enter judgment in her favor (and

against the Defendants) for her actual damages, statutory damages, reasonable attorney's fees

and costs, and for punitive damages.

Respectfully submitted,
Plaintiff Bridgette Sharhell Jackson's Counsel
Paúl Camarena
*/s/ Paúl Camarena*
Paúl Camarena, Esq.
26 Court St., No. 409
Brooklyn, NY 11242
(312) 493-7494
paulcamarena@paulcamarena.com
NY Atty No: 3991981